**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

September 15, 2017

Vincent G. Robertson, Esq.
Parkowski, Guerke and Swayze, P.A.
19354C Miller Road
Rehoboth Beach, DE 19971

Timothy G. Willard, Esq.
Fuqua, Willard, Stevens & Schab, P.A.
26 The Circle
Georgetown, DE 19947

Craig T. Eliassen, Esq.
Schmittinger & Rodriguez, P.A.
414 S. State Street
P.O. Box 497
Dover, DE 19903

Re: *Sussex County v. Berzins Enterprises, Inc. & Ocean Way Estates Homeowners Association*, Civil Action No. 8769-VCG

Dear Counsel:

This matter involves a rather extensive housing development, Ocean Way Estates ("Ocean Way"), located near the town of Ocean View and just west of the Assawoman Canal. The development is located so as to constitute a natural short-cut from the Muddy Neck area of Sussex County to the Assawoman Canal Bridge on Route 26, providing access to Bethany Beach. Perhaps the developers should have had an inkling that streets in Ocean Way, if not otherwise controlled, would provide a way to the ocean tempting to non-residents. Nothing in the site plans or plats (together the "Site Plans") for Ocean Way submitted by the Defendant

Berzins Enterprises, Inc. ("Berzins") and approved by the Sussex County Planning and Zoning Commission (the "Commission") included provision for barriers or gates to prevent through travel. Berzins erected such gates nonetheless, the Commission objected, and Sussex County sought injunctive relief to keep the gates open. Meanwhile, Berzins sought an amendment to the Site Plan from the Commission, to accommodate the gates. The proceeding before the Commission was not a model of clarity, but it ultimately denied that application. Berzins alleged flaws in the denial, and that matter was consolidated with the County's request for injunctive relief in this action.

Currently before me are cross motions for summary judgment involving the request for injunctive relief as well as review of the Commission's decision (the "Administrative Law Issue"). I here decide the Administrative Law Issue and seek the parties' further guidance on the appropriate final injunctive relief.

### I. BACKGROUND FACTS

*A. Gate Construction*

Between 1974 and 1991, Defendant Berzins Enterprises, Inc. ("Berzins") constructed the Ocean Way subdivision[1] in four phases.[2] At some point, Berzins

---

[1] Ocean Way Estates Homeowners Association (as "Ocean Way" above) was added as a Defendant "after the streets were transferred to the HOA." Pl.'s Opening Br. 19.
[2] *See* Draft Hr'g Tr. 3:2–4 (June 19, 2017).

found it desirable to block traffic travelling from Muddy Neck Road to Route 26 from using the private streets in the subdivision as a short-cut. To this end, Berzins installed internal barriers, and later gates (the "gates") blocking such through traffic.[3] These gates, however, had not been included on the Site Plans for Ocean Way,[4] and erecting the gates amounted to unauthorized self-help from the point of view of Sussex County. The Commission and the Sussex County attorney sent Berzins several letters[5] stating that the gates were out of compliance with the Sussex County Subdivision Code[6] (the "Code"); and the Commission addressed the issue at a Commission meeting on December 11, 2014 (the "2014 Meeting").[7] Meanwhile, Sussex County sought an injunction forcing Berzins to remove the gates.

*B. Commission Proceedings*

At the 2014 Meeting, Berzins petitioned the Commission to amend the Site Plan to reflect the gates as constructed.[8] The Chairman of the Commission stated that he "d[id]n't think it r[ose] to the level of a public hearing"[9] and a motion for

---

[3] Planning & Zoning Comm'n Meeting Tr. 10:22–11:15 (Dec. 11, 2014) ("Dec. 2014 Meeting") Ex. 8.
[4] *See* Draft Hr'g Tr. 3:24–4:2 (June 19, 2017).
[5] *See, e.g.*, Exs. 2–4 (three letters from Sussex County to Berzins between April 12 and December 13, 2011). All exhibits cited in this letter opinion are in the stipulated record.
[6] Sussex Cty. C. § 99.
[7] Dec. 2014 Meeting Ex. 8.
[8] Planning & Zoning Comm'n Hr'g Tr. (Feb. 11, 2016) ("Feb. 2016 Hr'g") Ex. 20 at 8:24–25.
[9] Feb. 2016 Hr'g Ex. 20 at 9:9–10.

3

"conceptual approval"[10] of the amendment request was passed. The Commission then sent a letter to Berzins confirming that the "Commission approved the request to allow the gates . . . to remain" but that "[a]n amended record plan need[ed] to be submitted *and approved* by the Commission."[11]

Berzins submitted an amended record plan[12] and the Commission recommended that Berzins "request a public hearing . . . to allow for the public to provide testimony,"[13] presumably because the change was a "substantial change to the intent of the original [Site Plan]" under the Code.[14] After a hearing on February 11, 2016,[15] the Commission considered the issue at its meeting on March 10, 2016 (the "2016 Meeting").[16]

In explaining its decision at the 2016 Meeting, the Commission noted a number of substantive concerns[17] and voted unanimously to deny an amendment

---

[10] *Id.* at 13:23–24.

[11] *See* Letter from Shane Abbott to Timothy Willard, Esq. (Dec. 14, 2014) Ex. 7 ("Comm'n Dec. 2014 Letter") (emphasis added).

[12] *See* Axiom Eng'g LLC Transmittal Letter (May 21, 2015) Ex. 13.

[13] Mins. of the Regular Meeting of the Sussex Cty. Planning & Zoning Comm'n (June 25, 2015) Ex. 14. ("June 2015 Meeting").

[14] Opponents to the gates specifically highlighted this argument to the Commission. S*ee* Letter from Eric. C. Howard, Esq. to Robert C. Wheatley (Mar. 6, 2015) Ex. 10 ("Opposition Letter").

[15] Feb. 2016 Hr'g Ex. 20.

[16] Planning & Zoning Comm'n Meeting Tr. (Mar. 10, 2016) Ex. 21 ("2016 Meeting").

[17] Delaware Code establishes a Sussex County Planning and Zoning Commission with five voting members. 9 *Del. C.* § 6803. Of those, four spoke at the March 2016 Meeting, with Vice-Chairman Smith directing the proceeding. Their names and key statements are as follows:
- Commissioner Johnson
  - "However, as I have been on this Commission now going on 11 years, I don't ever remember us having gates installed in the middle of subdivisions that could create a difficult

4

that would permit the gates to remain.[18]  Berzins contends that the decision of the

Commission is void or unenforceable.

### C. Procedural History and Issues for this Letter Opinion.

The petition by Sussex County for injunctive relief[19] and the Defendants'

appeal of the March 10, 2016 Commission decision are now consolidated into the

present matter.[20]  The case was stayed for some time to allow the Parties to exhaust

administrative procedures.

Since the Commission has now denied Berzins's application to amend the

Site Plan, it is appropriate to consider the Defendants' challenges to that action.

---

situation for many people, not just the handicapped for the elderly, but you have a single parent with young children in the car, and then they have to get out and try and maneuver a manual gate." *Id.* at 2:18–25.

- Commissioner Burton
  - "I looked at it as what was approved on the site plan when it was originally approved? . . . And it's an amendment to a site plan of an already built-out community, and I just – I can't see my way through it." *Id.* at 3:9–10, 3:14–16.
- Commissioner Ross
  - "[T]he location of the gates was recently but informally considered by the Commission without the benefit of a public hearing." *Id.* at 4:9–11.
  - "[T]he gates have never been approved by Sussex County." *Id.* at 4:20–21.
  - "[T]here was testimony in the record that the gates are not all currently functioning, and that they create safety and convenience issues to the property owners, residents, and guests within Ocean Way Estates.  There was testimony that people need to get out of their cars to operate the swing gates, which could be difficult for elderly or disabled people.  And there was testimony that the swing gates are often locked or blocked, making them completely inaccessible to elderly and disabled people." *Id.* at 5:16–25.
  - "[T]here was testimony from a property owner . . . that . . . has had to open the gates for emergency vehicles so they could get to their destination within the development . . . ." *Id.* at 6:1–2, 6:5–7.

[18] *Id.* at 7:13–15.

[19] *See* Pl.'s Verified Pet. for Injunctive Relief.

[20] *See* May 5, 2016 Order ¶ 2; Pl.'s Opening Br. 19.

5

The Defendants assert three grounds for their contention that the Commission's decision is void or unenforceable. They argue that collateral estoppel[21] attaches to the Commission's preliminary approval of the gates after the 2014 Meeting, preventing a contrary decision at the 2016 Meeting. They argue that laches bars any relief for the County with respect to the gates.[22] Finally, Berzins argues that the Commission's decision to deny the Site Plan amendment lacks substantial evidence and should be denied by this Court as arbitrary and capricious.[23] I examine each in turn.

## II. ANALYSIS

### A. The Defendants' Predicate Arguments

The Defendants first argue that Sussex County is collaterally estopped from enforcing the Commission's decision to deny their request to modify the Site Plan, because the Commission, acting as a quasi-judicial entity, approved the gates at the 2014 Meeting. Assuming for purposes of this argument that the decision taken at the 2016 Meeting is "collateral" to that of the 2014 Meeting[24] and that an earlier

---

[21] Def. Berzins Enterprises, Inc.'s Answering Br. in Opp'n to Pl.'s Mot. for Summ. J., & in Supp. of Its Cross Mot. for Summ. J. & Its Appeal of the Sussex Cty.'s Planning & Zoning Comm'n's Mar. 10, 2016 Decision ("Def. Berzins's Answering Br.") Ex. 11; Def. Ocean Way Estates Homeowners Ass'n's Br. in Opp'n to Pl.'s Mot. for Summ. J. ("Def. Ocean Way's Answering Br."). 5.

[22] Def. Berzins's Answering Br. 14.

[23] Def. Berzins's Answering Br. 15.

[24] A more pertinent analogy to a judicial proceeding would be preclusion under law-of-the-case doctrine, a theory the Defendants did not pursue.

Commission decision can be issue-preclusive, the Defendants have still failed to effectively raise a collateral estoppel bar here. Collateral estoppel "conserves judicial resources" as well as litigant effort by "preventing the relitigation of an issue previously decided."[25] Collateral estoppel requires four elements: (1) a question of fact essential to the judgment, (2) that was litigated and (3) determined (4) by a valid and final judgment.[26] Collateral estoppel cannot apply to the 2014 decision of the Commission to approve the gates, because that decision was explicitly preliminary and required Berzins to make an application subject to further Commission approval. A "conceptual approval"[27] that requires further submission of a "final amended record plan"[28] is not a "determined" or "final"[29] decision. Moreover, Berzins made the application and participated fully in the public hearing on its request; having "litigated" and lost before the Commission, the Defendants are not in a position to raise collateral estoppel at this point.[30]

Next, the Defendants argue that Sussex County is precluded from equitable relief under the doctrine of laches. The Defendants point out that the roads in

---

[25] *Columbia Cas. Co. v. Playtex FP, Inc.*, 584 A.2d 1214, 1216 (Del. 1991).
[26] *Taylor v. State*, 402 A.2d 373, 375 (Del. 1979) (citing *Tyndall v. Tyndall*, 238 A.2d 343, 346 (Del. 1968)).
[27] *See* Feb. 2016 Hr'g Ex. 20 at 13:23–24.
[28] *See* Def. Berzins's Answering Br. 5; Comm'n Dec. 2014 Letter Ex. 7.
[29] *See Taylor*, 402 A.2d at 375.
[30] *See Ingram v. Thorpe*, 2014 WL 4805829, at *3 (Del. Sept. 26, 2014) (upholding trial court decision that invoked collateral estoppel to bar vendors from relitigating a real estate commission's determination that vendor breached a conditional sale agreement).

Ocean Way have been blocked at various points and at different times over the years; they argue that the County has slept on its rights and should not be aided by equity here. Laches requires undue delay and resulting prejudice.[31] The Defendants point out that they got away with an unauthorized variance from the Site Plan for some years; this, without more, states no prejudice. The Defendants are able to point to nothing else in the way of prejudice,[32] and laches, therefore, is not invoked.

*B. The Defendants' Substantive Argument*

The remaining question is straightforward and narrow: whether the Commission's March 10, 2016 decision fails the administrative law standard of review by being arbitrary and capricious or lacking substantial evidence. A party challenging a final decision by a zoning authority must overcome a "presumption of validity"[33] that the decision is binding unless that party "clearly show[s]" that the decision is "arbitrary and capricious because it is not reasonably related to the public health, safety, or welfare."[34] The court looks "narrowly"[35] to determine

---

[31] *See Scureman v. Judge*, 626 A.2d 5, 13 (Del. Ch. 1992) (stating that laches "prevent[s] the enforcement of a claim in equity if the plaintiff delayed unreasonably in asserting the claim, thereby causing the defendants to change their position to their detriment"), *aff'd sub nom. Wilmington Tr. Co. v. Judge*, 628 A.2d 85 (Del. 1993).

[32] Draft Hr'g Tr. 20:1–9 (June 19, 2017) (conceding that the Defendants fail to identify any specific detriment resulting from any delay).

[33] *TD Rehoboth LLC v. Sussex Cty. Council*, 2017 WL 3528391, at *6 (Del. Ch. Aug. 11, 2017).

[34] *Tate v. Miles*, 503 A.2d 187, 191 (Del. 1986).

[35] *Id.* at 191.

whether a lack of "a record of substantial evidence"[36] indicates an "unreasoned, irrational or unfair process" that is "unconsidered" or "taken without consideration of and in disregard of the facts and circumstances of the case."[37] Where "reasonableness" is "fairly debatable," the court "will not substitute its judgment for the Council's."[38]

The Commission's administrative process was problematic. Equitable questions arise from the steps taken by Sussex County to walk back from a letter that "approved the request to allow the gates . . . to remain,"[39] and to thereafter require a public hearing[40] and ultimately deny the request to change the subdivision Site Plan.[41] The wavering from 2014 to 2016 creates an appearance of caprice, no doubt. The Defendants purportedly relied on the Commission's preliminary approval in expending effort to seek a Site Plan amendment. For tactical reasons, they have chosen not to allege that equitable estoppel has arisen on account of this conduct, however.[42] What I must decide, therefore, is whether the decision taken at the 2016 Meeting was itself arbitrary and capricious or unsupported, in light of

---

[36] *Save Our Cty., Inc. v. New Castle Cty.*, 2013 WL 2664187, at *9 (Del. Ch. June 11, 2013), *aff'd sub nom. Barley Mill, LLC v. Save Our Cty., Inc.*, 89 A.3d 51 (Del. 2014).
[37] *Id.* at *9.
[38] *Tate*, 503 A.2d at 191.
[39] *See* Comm'n Dec. 2014 Letter Ex. 7.
[40] *See* June 2015 Meeting Ex. 14.
[41] *See* 2016 Meeting Ex. 21 at 7:13–15.
[42] Draft Hr'g Tr. 23:5–10 (June 19, 2017).

9

the evidence adduced at the 2016 public hearing and the rationale stated by the Commission for its decision. I conclude that it was not. I will not here repeat the evidence and rationale laid out in the fact section of this Letter Opinion.[43] It is sufficient to point out that the record is replete with references to safety concerns[44] and inconvenience to residents of Ocean Way[45] caused by the gates. Clearly, substantial testimony and record evidence was submitted *supporting* maintenance of the gates, or installation of more permanent barriers, as well; to say that is simply to note that weighing such evidence is within the discretion of the Commission, and not this Court. Members of the Commission stated the reasons for their decision on the record, and those statements were tied to appropriate concerns for public safety or convenience.[46] Nothing in the record indicates that any member based her decision on an incorrect understanding of the facts.[47] The standard to overcome an administrative law decision is necessarily high.

---

[43] *See supra* note 17.

[44] *See, e.g.,* 2016 Meeting Ex. 21 at 6:5–6 (blocked safety vehicles); *id.* at 5:23–25 (lack of access for the elderly and disabled).

[45] *See, e.g., id.* at 6:8–10 (forcing drivers to turn around in resident's yard).

[46] This situation is in contrast to this Court's recent decision in *TD Rehoboth LLC v. Sussex Cty. Council*, 2017 WL 3528391, at *8 (Del. Ch. Aug. 11, 2017) ("Because Councilman Wilson did not 'state the reasons for [his] decision on the record,' his vote on the Rezoning Application is invalid. This is so for the simple reason that he did not create an adequate record to enable the Court to engage in meaningful judicial review of his decision.").

[47] *See TD Rehoboth LLC*, 2017 WL 3528391, at *9 ("Indeed, the record reveals that Councilman Vincent based his decision to deny the Rezoning Application on a potential for harm that was already extant with the current zoning of the Property. Thus, his decision was made 'without consideration of and in disregard of the facts and circumstances of the case.'").

Defendants cannot prevail on these facts.

The Defendants in briefing make a final argument. They point to the fact that one Commissioner stated on the record that he saw no "compelling" reason to believe that, had the internal gates been sought in the initial Site Plan application, the plan would have been so approved.[48] The Defendants argue that the Commission imported an improper "compelling" standard into consideration of their amendment request.[49] To the extent this argument was not waived at oral argument,[50] it must fail. The Defendants do not contend that a determination by the Commissioners of what their predecessors of decades ago would have done with a hypothetical application was relevant to the issue actually before the Commissioners; an amendment to the Site Plan that in fact had been approved. Nothing in the record cited by the Defendants indicates that the consideration of that issue encompassed legal error.

### III. CONCLUSION

The Commission's decision taken at the 2016 Meeting was not arbitrary and capricious or lacking substantial evidence. The Commission's decision is upheld. To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

---

[48] Def. Berzins's Answering Br. 16 (*citing* 2016 Meeting at 7:7–11).
[49] Def. Berzins's Answering Br. 16–17.
[50] *See* Draft Hr'g Tr. (June 19, 2017) (omitting any argument about a "compelling" legal standard).

The parties should confer on the appropriate equitable relief, and whether further proceedings are required.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III