**WIFE S., Defendant, Appellant,**

v.

**HUSBAND S., Plaintiff, Appellee.**

Supreme Court of Delaware.

Submitted May 9, 1977.

Decided June 7, 1977.

---

James P. D'Angelo and Edward T. Ciconte, Wilmington, for defendant-appellant.

Victor F. Battaglia, Biggs & Battaglia, Wilmington, for plaintiff-appellee.

Before HERRMANN, Chief Justice, DUFFY and McNEILLY, Justices.

PER CURIAM:

In this contested divorce action the Superior Court determined that the husband (plaintiff) resided in Delaware and that he was entitled to a divorce on the ground of voluntary separation. 13 *Del.C.* § 1505. The wife (defendant) appeals on three grounds: (1) the Trial Court's determination that the parties voluntarily separated is unsupported by the evidence; (2) the Trial Court's determination that plaintiff was a *bona fide* resident of the State is unsupported by the evidence; and (3) public policy requires a reversal.

*I. On March 29, 1976, after the complaint was filed, § 1505 was amended to provide that a contested divorce on the basis of voluntary separation may be granted only if it is evi-*

There is sufficient evidence to support the Court's finding that plaintiff "actually resided" in Delaware at the time the complaint was filed, 13 *Del.C.* § 1504(a), and, accordingly, we affirm both that finding and the Court's conclusion that it had subject matter jurisdiction. Cf. *Levitt v. Bouvier*, Del.Supr., 287 A.2d 671 (1972). In view of the ruling stated hereafter, it is unnecessary to consider plaintiff's public policy argument.[1]

At the time the complaint was filed § 1505 provided as follows:

"(a) The Court shall enter a decree of divorce when it finds that the marriage is irretrievably broken.

(b) A marriage is irretrievably broken where it is characterized by (1) voluntary separation, . . . ."

And § 1503 of the same title stated:

"For purposes of this chapter, unless the context indicates differently:

.     .     .     .     .

(7) 'Separation' means living separate and apart without any cohabitation for 6 or more months . . . .

(8) 'Voluntary separation' means separation by mutual consent or acquiescence . . . ."

See 59 *L.Del.* ch. 350.

Defendant tacitly concedes that the Court correctly determined that the marriage was "irretrievably broken," so there is no dispute as to that aspect of the statute. The controversy centers on whether plaintiff proved that the parties were "voluntarily separated."

To be voluntary within the meaning of the statute, a separation must be with the consent of both parties. This is to say that a plaintiff must prove that the "separation was mutually voluntary." *Hallman v. Hallman*, Del.Supr., 9 Storey 145, 215 A.2d 427 (1965). And a "consent" by one spouse which results from miscon-

*denced by a written agreement of the parties, or by their participation in a judicial proceeding based upon consent to the separation.*

duct by the other is not voluntary. *Wife V. v. Husband V.*, Del.Supr., 291 A.2d 277 (1972). Mutuality is the essence of the statute. *Willcox v. Willcox*, Del.Supr., 8 Storey 312, 209 A.2d 166 (1965).

Here, plaintiff made out a *prima facie* case when he offered evidence that his wife agreed to separate.[2] But it is undisputed that during the year before the separation the husband, according to his own testimony, had engaged in sexual affairs with "possibly three" different women and that his wife was aware "at any rate" that he was "seeing" at least one of them. Thus the evidence as to the wife's "consent" must be viewed in light of these circumstances.[3]

On this state of the evidence the Superior Court concluded that defendant, "having presented a defense, has not established it." In our view, the Court erroneously placed such a burden upon the wife. She was not obliged to prove any defense. The obligation was upon her husband to prove, by a preponderance of the evidence, that she had voluntarily agreed to separate from him. Given the husband's admitted infidelities and the wife's undisputed testimony as to *why* she was agreeable to a separation, there is not sufficient evidence to support a finding of voluntariness. In short, plaintiff's evidence showed a separation and expressions of consent thereto by the wife, but the evidence does not support a finding of mutuality which is the fundamental requirement of the statute. *Willcox v. Willcox, supra; Hallman v. Hallman, supra.* Compare *Wife V. v. Husband V., supra.*

It follows, therefore, that the judgment of the Superior Court must be reversed.

2. The husband testified:
 ". . . I think that she agreed that it was a bad situation to let go on and on, and for the benefit of the children, as well as ourselves, we should just separate, which is what we did."
 The husband's lawyer in a Pennsylvania action between the parties testified as follows concerning statements by the wife in a Pennsylvania courtroom:
 "If I can remember exact words, she looked at Cunningham while he was talking to the Judge and said—he was agreeing that there should be visitation privileges—and I think her exact words were, 'No, no. We

agreed to separate. I don't want him around,' words to that effect, and it was said more than once, the fact that he shouldn't have her, 'I don't want him around the house.' "

3. During her deposition which was read into evidence by plaintiff the wife testified as follows:
 "Question: So that it was your intention to bring a separation between yourself and your husband and to continue that separation?
 Answer: He wanted to go off with this other woman. What was I to do?"